**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **SAVANNAH LICENSING LLC,** | **CASE NO.: 2:22-cv-04202** |
| Plaintiff, | **PATENT CASE** |
| v. | **JURY TRIAL DEMANDED** |
| **QUEST SOFTWARE INC.,** | |
| Defendant. | |

**COMPLAINT FOR INFRINGEMENT OF PATENT**

Now comes Plaintiff, Savannah Licensing LLC ("Plaintiff"), by and through undersigned counsel, and respectfully alleges, states, and prays as follows:

**NATURE OF THE ACTION**

1.       This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin Defendant Quest Software Inc. (hereinafter "Defendant"), from infringing and profiting, in an illegal and unauthorized manner, and without authorization and/or consent from Plaintiff from U.S. Patent No. 8,680,992 ("the '992 Patent") and U.S. Patent No. 9,454,777 ("the '777 Patent" or collectively the "Patents-in-Suit"), and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

**THE PARTIES**

2.       Plaintiff is a limited liability company organized under the laws of Texas with a mailing address of 9901 Brodie Lane, Suite 160 PMB925, Austin, Texas 78748.

3.       Upon information and belief, Defendant is corporation organized and existing under the laws of Delaware. Upon information and belief, Defendant has a principal place of business located at 5 Polaris Way, Aliso Viejo, California 92656.

1

4.      Upon information and belief, Defendant maintains an established place of business in this district located at 6500 Emerald Parkway – Suite 400, Dublin, Ohio 43016.

5.      Upon information and belief, Defendant can be served through its registered agent c/o Corporation Service Company, 3366 Riverside Drive – Suite 103, Upper Arlington, Ohio 43221.

6.      Plaintiff is further informed and believes, and on that basis alleges, that Defendant operates the website www.quest.com, which is in the business of providing software and related services.  Defendant derives a portion of its revenue from sales and distribution via electronic transactions conducted on and using at least, but not limited to, its Internet website located at www.quest.com, and its incorporated and/or related systems (collectively the "Defendant Website").  Plaintiff is informed and believes, and on that basis alleges, that, at all times relevant hereto, Defendant has done and continues to do business in this judicial district, including, but not limited to, providing products/services to customers located in this judicial district by way of the Defendant Website.

## JURISDICTION AND VENUE

7.      This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1 *et seq*.

8.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction and its residence in this District, as well as because of the injury to Plaintiff, and the cause of action Plaintiff has risen in this District, as alleged herein.

10.     Defendant is subject to this Court's specific and general personal jurisdiction pursuant to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this forum state and in this judicial District; and (iii) having an established place of business in this District.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017) through its regular and established place of business in this District.

## FACTUAL ALLEGATIONS
### THE '992 PATENT

12.     On March 25, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '992 Patent, entitled "Measuring and Improving the Quality of a User Experience" after a full and fair examination. The '992 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

13.     Plaintiff is presently the owner of the '992 Patent, having received all right, title and interest in and to the '992 Patent from the previous assignee of record.  Plaintiff possesses all rights of recovery under the '992 Patent, including the exclusive right to recover for past infringement.

14.     To the extent required, Plaintiff has complied with all marking requirements under 35 U.S.C. § 287.

15.     The invention claimed in the '992 Patent comprises a method for providing feedback from a device.

3

16.    Claim 1 of the '992 Patent recites a non-abstract method for implementing, measuring and improving the quality of a user experience.

17.    Claim 1 of the '992 Patent provides the practical application of a method for implementing, measuring and improving the quality of a user experience.

18.    Claim 1 of the '992 Patent provides an inventive step for implementing, measuring and improving the quality of a user experience to address the deficiencies and needs identified in the Background section of the '992 Patent. See Ex. A.

19.    Claim 1 of the '992 Patent states:

> "1. A method for providing feedback from a device, the method comprising:
> detecting a user frustration event;
> associating the user frustration event with a device event that includes an active operation of the device at a time when the user frustration event occurred;
> forming an event package based at least in part on the user frustration event and the device event that includes information indicating a level, a type of user frustration, and information related to routing the event package through a network; and
> transmitting the event package. See Ex. A at Col. 14: 18-29.

20.    As identified in the '992 Patent, prior art systems had technological faults. See Ex. A at Col 1:10-15.

21.    More particularly, the '992 Patent identifies that the prior art provided: "Increased adoption of new mobile devices and services may depend on the quality of experience perceived by users. Current methods for evaluating user experience may be network based and may be delayed from the user's experience. *Id.*

22.    To address this specific technical problem, Claim 1 in the '992 Patent comprises a non-abstract method for providing feedback from a device…detecting a user frustration event,

associating the user frustration event with a device event, forming an event package based on the user frustration event and the device event and transmitting the event package. Ex. A at Claim 1.

23. Claim 1 of the '992 Patent is a practical application and inventive step of technology that address the specific network-centric problem of when the evaluation of a user's experience and/or specific frustration event is delayed from the event's occurrence, and there is a need to indicate a level and a type of user frustration and route the information through a network based on this information.

24. The '992 Patent indicates that one advantage of its invention of Claim 1 is a method for associating the user frustration event with a device event, specifically including the active operation of the device at a time when the user event occurred. Ex. A at Claim 1.

25. Moreover, Claim 1 of the '992 Patent provides specific non-conventional and non-generic arrangement of known, conventional pieces to overcome an existing problem.

26. Regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the method of Claim 1 in the '992 Patent would not preempt all ways of providing feedback from a device and user frustration event because Claim 1 requires associating a user frustration event with a device event including the active operation of the device at a time when the user frustration event occurred, and forming an event package based in part on the user frustration event and the device event, where the event package includes information indicating a level and a type of user frustration and information related to routing the event package through a network.

27. There are other ways to detect a frustration event and obtain feedback from a device when a user is experiencing a frustration event. Specifically, the method of Claim 1 does not preempt all ways of providing feedback from a device and user frustration event because the device

event could be sent without the active operation of the device event and/or the event package could be transmitted with different information that does not include information indicating a level, a type of user frustration, and information related to routing the event package through a network, as required by Claim 1 of the '992 patent.

28.     Further, with respect to the inventive concept, the method of Claim 1 of the '992 Patent requires "associating the user frustration event with a device event, the device event including an active operation of the device at a time when the user frustration event occurred, forming an event package based at least in part on the user frustration event and the device event, the event package including information indicating a level and a type of user frustration and information related to routing the event package through a network. Ex. A at Claim 1.

29.     Claim 1 of the '992 Patent provides meaningful details on *how* to implement its method, and thus adds something inventive.  Namely, the USPTO allowed Claim 1 at least in part because the applicant amended Claim 1 to address the fact that prior art failed to disclose: (1) a method for providing feedback from a device where the method includes, among other features, "associating the user frustration event with a device event, the device event including an active operation of the device at a time when the user frustration event occurred, forming an event package based at least in part on the user frustration event and the device event, the event package including information indicating a level and a type of user frustration and information related to routing the event package through a network" as recited in Claim 1. See Exhibit B, Applicant Arguments/Remarks Made in an Amendment at pages 12-13, dated September 19, 2013.

30.     Thus, the "*how*" of the method of Claim 1 corresponds to the USPTO's subsequent Notice of allowance in response to Applicant Amendment. "How" the method operates in an inventive way over prior art is due to the requirement that the user frustration event be associated

with a device event where "the device event including an active operation of the device at a time when the user frustration event occurred and due to "the event package including information indicating a level and type of user frustration and information related to routing the event package through a network. *Id.*

31.     Based on the foregoing assertions, Claim 1 of the '992 Patent provides a non-abstract and an unconventional inventive concept as described in the claims, specification and prosecution history.

32.     Further, these specific elements also accomplish these desired results to overcome the then existing problems in the relevant field of network communication systems involving detection, measurement and feedback for user frustration events. *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that improving computer security can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem). See also *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. April 30, 2020).

33.     Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

34.     These specific elements of Claim 1 of the '992 Patent (i.e., associating a user frustration event with a device event; the device event *including an active operation of the device at a time when the user frustration event occurred;* forming an event packaged based on both the user and device events; and the event package including information indicating a level and type of user frustration event and *information related to touting the event package through a network*)

were an unconventional arrangement of elements because the prior art methodologies would not associate user frustration events with a device event include active operation of the device; and because prior art failed to address the need for determining a specific level type for the user event.

35.     Claim 1 of the '992 Patent was able to unconventionally generate a method for obtaining specific feedback from a user and their device under specific circumstances where a frustration event occurred and there was active device operation at the same time. *Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019).

36.     Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the method of Claim 1 of '992 Patent provides a method of providing feedback from a device that would not preempt all ways of detecting and providing feedback from a device, any of which could be removed or performed differently to permit a method of determining frustration feedback in a different way. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); See also *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014)

37.     Based on the allegations, it must be accepted as true at this stage, that Claim 1 of the '992 Patent recites a specific, plausibly inventive way of detecting a user frustration event and providing specific relevant feedback through a network. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020).

38.     Moreover, based on the allegations, the claim language, and the written description, the particular arrangement of elements in Claim 1 of the '992 Patent is technical improvement over prior art, in that prior art failed to disclose the above referenced limitation related to the active operation of the device at the time of the user event; associating the events into a package that

specifically includes a level and a type of frustration along with additional information related to routing the event package through a network. See *Coop. Ent., Inc. v. Kollective Tech., Inc.*, No. 2021-2167, 2022 WL 4488902 (Fed. Cir. Sept. 28, 2022) (holding that the district court erred in dismissing a complaint where the claim language, the written description, and the amended complaint "describe[ ] how [the asserted patent's] particular arrangements of elements is a technical improvement over prior art." )

39.     The claims of the '992 Patent are not directed to an abstract idea and are therefore eligible for patent protection because the claims: (i) are directed toward a method for improving a computer network; and (ii) provide a specific solution to the computer network problem created by previous techniques of providing feedback related to a device experiencing a user frustration event. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020).

40.     The claims of the '992 Patent are associated with certain activities are not directed to an abstract idea and are therefore eligible for patent protection because the claims detail how the invention solves the technological problem of identifying previous flaws in a computer or networked environment. Namely, that previously known techniques could not solve the identified shortcomings and the claims focus on the specific improvement of a more granular, nuanced, and useful classification of providing feedback from a device where a user frustration event occurred. *Packet Intelligence LLC v. NetScout Systems, Inc.* 965 F.3d 1299 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2521 (2021).

41.     The claims of the '992 Patent are eligible inasmuch as they are directed to a specific improvement that solve a technical problem that were not conventional. *CosmoKey Solutions GMBH & Co. KG v. Duo Security LLC*, 15 F.4th 1091, 1098-99 (Fed. Cir. 2021); and *CardioNet, LLC v. InfoBionic, Inc.* 955 F.3d 1358 (Fed. Cir. 2020).

42.     Alternatively, there is at least a question of fact that must survive the pleading stage as to whether These specific elements of Claim 1 of the '992 Patent were an unconventional arrangement of elements. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) See also *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911, 205 L. Ed. 2d 454 (2020).

43.     Defendant commercializes, inter alia, methods that perform all the steps recited in at least one claim of the '992 Patent. More particularly, Defendant commercializes, inter alia, methods that perform all the steps recited in Claim 1 of the '992 Patent.  Specifically, Defendant makes, uses, sells, offers for sale, or imports a method that encompasses that which is covered by Claim 1 of the '992 Patent.

## THE '777 PATENT

44.     On September 27, 2016, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '777 Patent, entitled "Measuring and Improving the Quality of a User Experience Upon Receiving a Frustration Event Package" after a full and fair examination. The '777 Patent is attached hereto as Exhibit C and incorporated herein as if fully rewritten.

45.     Plaintiff is presently the owner of the '777 Patent, having received all right, title and interest in and to the '777 Patent from the previous assignee of record.  Plaintiff possesses all rights of recovery under the '777 Patent, including the exclusive right to recover for past infringement.

46.     To the extent required, Plaintiff has complied with all marking requirements under 35 U.S.C. § 287.

47.     The invention claimed in the '777 Patent comprises method to use feedback in a system implemented by a computing device.

10

48. Claim 1 of the '777 Patent recites a non-abstract method for using feedback in a system implemented by a computing device.

49. Claim 1 of the '777 Patent provides the practical application of a method for using feedback in a system implemented by a computing device.

50. Claim 1 of the '777 Patent provides an inventive step for using feedback in a system implemented by a computing device to address issues where user adoption of new mobile devices and/or services depends on the quality of experience perceived by users and where [at the time of invention] current methods for evaluating a user's experience are network based and include deficiencies such as delayed evaluation and transmission. See Ex. C at Col 1: 23-27.

51. Claim 1 of the '777 Patent states:

> "1. A method to use feedback in a system implemented by
> a computing device, comprising:
> receiving, by the computing device, a frustration event
> package comprising a user frustration event indicator
> and an associated event indicator that indicates a level
> and a type of user frustration associated with a user
> frustration event, wherein the user frustration event is
> associated with a device event that includes an active
> operation of a device at a time when the user frustration
> event occurred;
> determining, by the computing device, feedback based at
> least in part on the user frustration event indicator and
> the associated event indicator; and
> implementing, by the computing device, a network action
> based on the determined feedback." See Ex. C at Col 14:45-59.

52. To address specific technical problems associated evaluating the quality of a user's experience with a mobile devices and services over a network and subject to delay, Claim 1 in the '777 Patent comprises a non-abstract method for using feedback at a system including receiving a frustration event package including a user frustration event indicator and an associated event

indicator, determining feedback based on the user frustration event indicator and the associated event indicator and providing the feedback. Ex. C at Claim 1.

53.     Claim 1 of the '777 Patent is a practical application and inventive step of technology that address the specific network-centric problem of when the evaluation of a user experience or frustration event, is network based and delayed from the user's experience of the frustration event.

54.     The '777 Patent indicates that one advantage of its invention of Claim 1 is a method for specific and improved evaluation of user experience and the provision of the feedback.

55.     Moreover, Claim 1 of the '777 Patent provides specific non-conventional and non-generic arrangement of known, conventional pieces to overcome an existing problem.

56.     Regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the method of Claim 1 in the '777 Patent would not preempt all ways of providing feedback from a device and user frustration event because Claim 1 requires associating a user frustration event with a device event including the active operation of the device at a time when the user frustration event occurred, and forming an event package based in part on the user frustration event and the device event, where the event package includes information indicating a level and a type of user frustration and information related to routing the event package through a network.

57.     There are other ways to detect a frustration event and obtain feedback from a device when a user is experiencing a frustration event. Specifically, the method of Claim 1 does not preempt all ways of providing feedback from a device and user frustration event because the device event could be sent without the active operation of the device event and/or the event package could be transmitted with different information that does not include information indicating a level, a

type of user frustration, and information related to routing the event package through a network, as required by Claim 1 of the '777 patent.

58.     Further, with respect to the inventive concept, the method of Claim 1 of the '777 Patent requires "associating the user frustration event with a device event, the device event including an active operation of the device at a time when the user frustration event occurred, forming an event package based at least in part on the user frustration event and the device event, the event package including information indicating a level and a type of user frustration and information related to routing the event package through a network." Ex. C at Claim 1.

59.     Claim 1 of the '777 Patent provides meaningful details on *how* to implement its method, and thus adds something inventive.  Namely, the USPTO allowed Claim 1 at least in part because the applicant amended Claim 1 to address the fact that prior art failed to disclose: (1) a method for providing feedback from a device where the method includes, among other features, "associating the user frustration event with a device event, the device event including an active operation of the device at a time when the user frustration event occurred, forming an event package based at least in part on the user frustration event and the device event, the event package including information indicating a level and a type of user frustration and information related to routing the event package through a network" as recited in Claim 1. See Exhibit D, Applicants Amended Claims in Response to Non-Final Rejection and Notice of Allowance, at page 10, dated June 21, 2016, for the '777 Patent.

60.     Thus, the "*how*" of the method of Claim 1 corresponds to the USPTO's subsequent Notice of allowance in response to Applicant Amendment. "How" the method operates in an inventive way over prior art is due to the requirement that the user frustration event be associated with a device event where "the device event including an active operation of the device at a time

13

when the user frustration event occurred and due to "the event package including information indicating a level and type of user frustration and information related to routing the event package through a network. *Id.*

61.    Based on the foregoing assertions, Claim 1 of the '777 Patent provides a non-abstract and an unconventional inventive concept as described in the claims, specification and prosecution history.

62.    Further, these specific elements also accomplish these desired results to overcome the then existing problems in the relevant field of network communication systems involving detection, measurement and feedback for user frustration events. *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that improving computer security can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem). See also *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. April 30, 2020).

63.    Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

64.    These specific elements of Claim 1 of the '777 Patent (i.e., associating a user frustration event with a device event; the device event *including an active operation of the device at a time when the user frustration event occurred;* forming an event packaged based on both the user and device events; and the event package including information indicating a level and type of user frustration event and *information related to touting the event package through a network*) were an unconventional arrangement of elements because the prior art methodologies would not

14

associate user frustration events with a device event include active operation of the device; and because prior art failed to address the need for determining a specific level type for the user event.

65.     Claim 1 of the '777 Patent was able to unconventionally generate a method for obtaining specific feedback from a user and their device under specific circumstances where a frustration event occurred and there was active device operation at the same time. *Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019).

66.     Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the method of Claim 1 of '777 Patent provides a method of providing feedback from a device that would not preempt all ways of detecting and providing feedback from a device, any of which could be removed or performed differently to permit a method of determining frustration feedback in a different way. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); See also *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

67.     Based on the allegations, it must be accepted as true at this stage, that Claim 1 of the '777 Patent recites a specific, plausibly inventive way of detecting a user frustration event and providing specific relevant feedback through a network. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020).

68.     Moreover, based on the allegations, the claim language, and the written description, the particular arrangement of elements in Claim 1 of the '777 Patent is technical improvement over prior art, in that prior art failed to disclose the above referenced limitation related to the active operation of the device at the time of the user event; associating the events into a package that specifically includes a level and a type of frustration along with additional information related to

15

routing the event package through a network. See *Coop. Ent., Inc. v. Kollective Tech., Inc.*, No. 2021-2167, 2022 WL 4488902 (Fed. Cir. Sept. 28, 2022) (holding that the district court erred in dismissing a complaint where the claim language, the written description, and the amended complaint "describe[ ] how [the asserted patent's] particular arrangements of elements is a technical improvement over prior art.").

69. The claims of the '777 Patent are not directed to an abstract idea and are therefore eligible for patent protection because the claims: (i) are directed toward a method for improving a computer network; and provide a specific solution to the computer network problem created by previous techniques of providing feedback related to a device experiencing a user frustration event. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020).

70. The claims of the '777 Patent are associated with certain activities are not directed to an abstract idea and are therefore eligible for patent protection because the claims detail how the invention solves the technological problem of identifying previous flaws in a computer or networked environment. Namely, that previously known techniques could not solve the identified shortcomings and the claims focus on the specific improvement of a more granular, nuanced, and useful classification of providing feedback from a device where a user frustration event occurred. *Packet Intelligence LLC v. NetScout Systems, Inc.* 965 F.3d 1299 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2521 (2021).

71. The claims of the '777 Patent are eligible inasmuch as they are directed to a specific improvement that solve a technical problem that were not conventional. *CosmoKey Solutions GMBH & Co. KG v. Duo Security LLC*, 15 F.4th 1091, 1098-99 (Fed. Cir. 2021); and *CardioNet, LLC v. InfoBionic, Inc.* 955 F.3d 1358 (Fed. Cir. 2020).

72.     Alternatively, there is at least a question of fact that must survive the pleading stage as to whether These specific elements of Claim 1 of the '777 Patent were an unconventional arrangement of elements. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) See also *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911, 205 L. Ed. 2d 454 (2020).

73.     Defendant commercializes, inter alia, methods that perform all the steps recited in at least one claim of the '777 Patent. More particularly, Defendant commercializes, inter alia, methods that perform all the steps recited in Claim 1 of the '777 Patent. Specifically, Defendant makes, uses, sells, offers for sale, or imports a method that encompasses that which is covered by Claim 1 of the '777 Patent.

## DEFENDANT'S INSTRUMENTALITY AND THE '992 PATENT

74.     Defendant offers solutions, such as the "Quest Software Inc." website (the "Accused Instrumentality")[1], that enables the provision of feedback from a device. For example, the Accused Instrumentality performs the method for providing feedback from a device. A non-limiting and exemplary claim chart comparing the Accused Instrumentality of Claim 1 of the '992 Patent is attached hereto as Exhibit E and is incorporated herein as if fully rewritten.

75.     As recited in Claim 1, a system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method for providing feedback from a device (e.g., providing a session report along with the feedback from a device (e.g., PC) enabled with the Accused Instrumentality). As shown in Exhibit E, the Accused Instrumentality uses LogRocket to detect and capture rage click sessions, trigger real time feedback and send session event report along with feedback from user's device. See Ex. E.

---

[1] The Accused Instrumentality is just one of the products provided by Defendant, and Plaintiff's investigation is on-going to additional products to be included as an Accused Instrumentality that may be added at a later date.

76.     As recited in one step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method of detecting a user frustration event (e.g., identifying rage clicks). As shown in Exhibit E, when user clicks repeatedly on a particular element or certain area of app or website, rage click is occurred which is detected/identified by Accused Instrumentality. The Accused Instrumentality auto-captures the session events of rage clicks in the form of session replay videos, click maps, heat maps, etc. and generates a real-time session event report along with the feedback and further transmitted to the teams of the Accused Instrumentality to analyze and resolve the issues and improve their services. See Ex. E.

77.     As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method of associating the user frustration event (e.g., repeatedly clicking on particular element i.e., rage clicking) with a device event (e.g., detecting and capturing sessions related to rage clicks) that includes an active operation of the device (e.g., active operation of the Accused Instrumentality) at a time when the user frustration event (e.g., repeatedly clicking on particular element i.e., rage clicking) occurred. See Ex. E.

78.     practices a method of forming an event package (e.g., session event report) based at least in part on the user frustration event (e.g., repeatedly clicking on particular element i.e., rage clicking) and the device event (e.g., detecting and capturing sessions related to rage clicks) that includes information indicating a level (session replay videos, click maps, heat maps, etc. for rage clicks), a type of user frustration, and information related to routing (e.g., IP address of the server of the Accused Instrumentality) the event package (e.g., session event report) through a network (e.g., Internet). See Ex. E.

79.     As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices transmitting the event package (e.g., transmitting session event report along with the feedback to the teams of the Accused Instrumentality). See Ex. E.

80.     The elements described in the preceding paragraphs are covered by at least Claim 1 of the '992 Patent. Thus, Defendant's use of the Accused Instrumentality is enabled by the method described in the '992 Patent.

## INFRINGEMENT OF THE '992 PATENT

81.     Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs

82.     In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing, either literally or under the doctrine of equivalents, the '992 Patent.

83.     Defendant has had knowledge of infringement of the '992 Patent at least as of the service of the present Complaint.

84.     **Direct Infringement.** Defendant has directly infringed and continues to directly infringe at least one claim of the '992 Patent by making, using, at least through internal testing or otherwise, offering to sell, selling and/or importing, without limitation, the Accused Instrumentality without authority in the United States, and will continue to do so unless enjoined by this Court.  As a direct and proximate result of Defendant's direct infringement of the '992 Patent, Plaintiff has been and continues to be damaged.

85.     **Induced Infringement.** Defendant has induced others to infringe the '992 Patent by encouraging infringement, knowing that the acts Defendant induced constituted patent

infringement, and its encouraging acts actually resulted in direct patent infringement either literally or under the doctrine of equivalents.

86. **Contributory Infringement**. Defendant actively, knowingly, and intentionally has been and continues materially contribute to their own customers' infringement of the '992 Patent, literally or by the doctrine of equivalents, by selling the Accused Instrumentality to their customers for use in end-user products in a manner that infringes one or more claims of the '992 Patent. Moreover, the Accused Instrumentality is not a staple article of commerce suitable for substantial non-infringing use.

87. By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '992 Patent, pursuant to 35 U.S.C. § 271.

88. Defendant has committed these acts of infringement without license or authorization.

89. As a result of Defendant's infringement of the '992 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

90. Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

91. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint.  The claim chart depicted in Exhibit E is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil

Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

### DEFENDANT'S INSTRUMENTALITY(S) AND THE '777 PATENT

92.     The Accused Instrumentality enables the use of feedback in a system implemented by a computing device.  A non-limiting and exemplary claim chart comparing the Accused Instrumentality of Claim 1 of the '777 Patent is attached hereto as Exhibit F and is incorporated herein as if fully rewritten.

93.     As recited in Claim 1, a system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method to use feedback in a system implemented by a computing device (e.g., generating a real time session report along with feedback by server of the Accused Instrumentality). As shown in Exhibit F, the Accused Instrumentality uses LogRocket to detect and capture rage click sessions, trigger real time feedback, generate and send session event report along with feedback from user's device. See Ex. F.

94.     As recited in one step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices receiving, by the computing device (e.g., a server of the Accused Instrumentality), a frustration event package (e.g., session event report) comprising a user frustration event indicator (e.g., an indicator which designates that the received event is a rage click) and an associated event indicator (e.g., an indicator to show captured session replays, click maps, heat maps, etc. for rage clicks) that indicates a level and a type of user frustration associated with a user frustration event (e.g., repeatedly clicking on particular element i.e., rage clicking), wherein the user frustration event (e.g., repeatedly clicking on particular element i.e., rage clicking) is associated with a device event (e.g., detecting and capturing sessions related to rage clicks) that includes an active operation of a device (e.g., active operation of the Accused

Instrumentality) at a time when the user frustration event (e.g., repeatedly clicking on particular element i.e., rage clicking) occurred. See Ex. F.

94. As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method of determining, by the computing device (e.g., a server of the Accused Instrumentality), feedback based at least in part on the user frustration event indicator (e.g., an indicator which designates that the received event is a rage click) and the associated event indicator (e.g., an indicator to show captured session replays, click maps, heat maps, etc. for rage clicks). See Ex. F.

96. As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method of implementing, by the computing device (e.g., a server of the Accused Instrumentality), a network action (e.g., notify/alert the respective team of the Accused Instrumentality regarding the session report) based on the determined feedback. See Ex. F.

97. The elements described in the preceding paragraphs are covered by at least Claim 1 of the '777 Patent. Thus, Defendant's use of the Accused Instrumentality is enabled by the method described in the '777 Patent.

## INFRINGEMENT OF THE '777 PATENT

98. Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

99. In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing, either literally or under the doctrine of equivalents, the '777 Patent.

100. Defendant has had knowledge of infringement of the '777 Patent at least as of the service of the present Complaint.

101. **Direct Infringement.** Defendant has directly infringed and continues to directly infringe at least one claim of the '777 Patent by making, using, at least through internal testing or otherwise, offering to sell, selling and/or importing, without limitation, the Accused Instrumentality without authority in the United States, and will continue to do so unless enjoined by this Court. As a direct and proximate result of Defendant's direct infringement of the '777 Patent, Plaintiff has been and continues to be damaged.

102. **Induced Infringement.** Defendant has induced others to infringe the '777 Patent by encouraging infringement, knowing that the acts Defendant induced constituted patent infringement, and its encouraging acts actually resulted in direct patent infringement either literally or under the doctrine of equivalents.

103. **Contributory Infringement**. Defendant actively, knowingly, and intentionally has been and continues materially contribute to their own customers' infringement of the '777 Patent, literally or by the doctrine of equivalents, by selling the Accused Instrumentality to their customers for use in end-user products in a manner that infringes one or more claims of the '777 Patent. Moreover, the Accused Instrumentality is not a staple article of commerce suitable for substantial non-infringing use.

104. By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '777 Patent, pursuant to 35 U.S.C. § 271.

105. Defendant has committed these acts of infringement without license or authorization.

106. As a result of Defendant's infringement of the '777 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

107.    Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.  As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

108.    Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint.  The claim chart depicted in Exhibit F is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

109.    Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.    That Defendant be adjudged to have directly infringed the '992 and '777 Patents either literally or under the doctrine of equivalents;

b.    An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

c.    That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly infringing the '992 and '777 Patents;

d.    An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement up until the date that

Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

e.   An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

f.   That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

g.   That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: November 29, 2022                     Respectfully submitted,

                                             SAND, SEBOLT & WERNOW CO., LPA

                                             */s/ Howard L. Wernow*
                                             Howard L. Wernow (SBN 0089019)
                                             Aegis Tower – Suite 1100
                                             4940 Munson Street NW
                                             Canton, Ohio 44718
                                             Telephone: (330) 244-1174
                                             Facsimile: (330) 244-1173
                                             Howard.Wernow@sswip.com

                                             ATTORNEY FOR PLAINTIFF